[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE CROSS MOTIONS FOR SUMMARY JUDGMENT
FACTS
By a two count amended substituted complaint dated December 7, 1993 and filed with the court on December 9, 1993, plaintiff James M. Spellman ("Spellman"), a former teacher of the East Lyme public school system, brought suit against the defendants, the East Lyme Board of Education ("Board"), and the East Lyme Teachers Association. ("ELTA").
Count one of the complaint is directed at the Board and alleges that it breached the collective bargaining agreement entered into by the Board and the teachers in the school system. Count two asserts that the ELTA violated the duty of fair representation that it owed to Spellman as a union member.
According to the complaint, the facts are as follows. After teaching in the East Lyme School Department for seven CT Page 3559 years as an english and social studies teacher, Spellman's position was eliminated by the Board pursuant to Article VII of the Collective Bargaining Agreement ("CBA") when his contract expired on June 30, 1990. Under Article VII, paragraph F, of the CBA, Spellman was placed on a reappointment list for a period of one year.[1] In summation, the relevant clause in the CBA provides that a teacher on the recall list is entitled to notification if a position "becomes open" during the one year recall period.[2]
In the Fall of 1990, a social studies teacher in the school department, Howard W. Ward, became ill at the start of the school year. His position was filled with a temporary substitute. Because of Ward's continued illness, the temporary substitute position evolved into a long-term substitution post. According to the facts as alleged in the complaint, Spellman claims that the Board never notified or offered him the position of temporary substitute or long-term substitute.[3] On April 30, 1991, the Board, through its school superintendent, Hal Rowe ("Rowe") entered into a separation agreement with the ill teacher, Ward. The agreement provided for the resignation of Ward to be effective on June 30, 1991. This agreement was signed by Ward and Rowe on April 30, 1991 and May 2, 1991 respectively. (See Plaintiff's exhibit F).
When Spellman learned of the separation agreement concerning Ward, he filed a formal grievance with the Superintendent of Schools on June 11, 1991. Spellman's grievance statement specifically states that it is based on the alleged fact that "a vacancy occurred in November 1990 at the Middle School when Howard Ward retired." (Plaintiff's exhibit G). Superintendent Rowe refused to sign the grievance form, and months later Spellman requested a grievance hearing before the Board on April 23, 1992. Spellman allegedly received no response from the Board.
On October 21, 1992, Spellman asked the ELTA for an arbitration hearing claiming a violation of CBA recall provision. On November 13, 1992, ELTA refused the request for arbitration. Spellman later received a copy of Ward's separation agreement on March 3, 1993, only after intervention and a ruling from the Freedom of Information Commission. The Board allegedly had refused to provide a copy of the separation agreement voluntarily. CT Page 3560
With the separation agreement in hand, Spellman made another request to both defendants for an arbitration hearing, and both defendants refused.
By a motion filed with the court on July 13, 1994, Spellman moved for summary judgment asserting that there are no material issues in dispute and that the only matter to be decided is a question of law. Specifically, Spellman asserts that the court need only interpret the provision of the CBA to determine whether or not the need for a substitute or long-term substitute in November of 1990 constituted an "opening" for purposes of triggering the recall clause's notification requirements.
On September 1 and September 2 respectively, the ELTA and the Board filed cross-motions for summary judgment. In their motions, both defendants allege that the court is without subject matter jurisdiction. The defendants assert that the terms of the collective bargain agreement require that a grievance be filed within 30 days of the alleged grievable event. Defendants point out that Spellman did not file his grievance until June 11, 1991 which is more that 150 days after the alleged "opening" or vacancy that occurred in November. Thus, defendants assert that Spellman failed to exhaust his administrative remedies, and the complaint should be dismissed.
Defendants also assert, however, that there was no breach of the CBA or a violation of the duty of fair representation because there was no grievable event. Relying on the language of the CBA, defendants assert that a substitute position is not an "opening" for which the recall provisions apply. Thus, defendants claim that there are no material issues in dispute and that they are entitled to summary judgment as a matter of law.
All parties have filed briefs in support of their respective positions, and Spellman filed a responsive memoranda in opposition to the defendants' cross-motions for summary judgment. In addition, both sides have submitted numerous supporting documentation including a copy of the CBA, various affidavits from school and union officials, and copies of relevant correspondence.
DISCUSSION
CT Page 3561
"Summary judgment is a method of resolving litigation when pleadings, affidavits, and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The motion for summary judgment is designed to eliminate the delay and expense of litigating an issue when there is no real issue to be tried." Wilson v. New Haven, 213 Conn. 277,279, 567 A.2d 829 (1989).
"The party seeking summary judgment has the burden of showing the absence of any genuine issue as to all the material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . [A]nd the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict on the same facts." (Citations omitted; internal quotation marks omitted.) Suarez v. Dickmont Plastics, Corp.,229 Conn. 99, 105-06, 639 A.2d 507 (1994).
In their cross motions for summary judgment, defendants assert that this court lacks subject matter jurisdiction because the defendant filed his grievance more than thirty days after the alleged hiring of the substitute teacher in November of 1990.[4] By relying on the doctrine of exhaustion, however, defendants implicitly assert, in illogical agreement with Spellman, that the hiring of the substitute teacher in November was a grievable event.
Later in their memorandum, the defendants further allege that the CBA was never breached because the replacement of Ward's position with a substitute cannot be considered to be an "opening" to which the CBA recall provisions would apply. "Where there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law." Bank of Bostonv. Schlesinger, 220 Conn. 152, 158, 2592 A.2d 872 (1991) quoting Thompson Peck, Inc. v. Harbor Marine ContractingCorp., 203 Conn. 123, 131, 523 A.2d 1266 (1987).
Lack of subject matter jurisdiction of the court can be CT Page 3562 raised an any time, and neither party can waive the subject matter jurisdiction of the tribunal. Lewis v. Gaming PolicyBoard, 224 Conn. 693, 698, A.2d 780 (1993). A close reading of the terms of the CBA and review of the supporting documentation submitted demonstrates that the November 1990 hiring of a substitute was not a "opening" under the terms of the CBA.
Article VII, paragraph F of the CBA states in part, "[i]f a position becomes open during [the one year period that a terminated teacher may appear on the recall list], and the teacher has been selected by the Board of Education . . . as a person on the recall list who is certified and the most qualified to hold the position, the teacher will be notified . . ." (emphasis added). Black's Law Dictionary defines substitute as "[o]ne who or that which stands in the place of another; that which stands in the place of something else." Black's Law Dictionary 1429 (6th ed. 1990). In comparison, the American Heritage dictionary defines opening as "An unfilled job or vacancy." The American Heritage Dictionary 870 (2nd College Ed. 1992).
The termination agreement entered into by the Board and Ward demonstrates that Ward's teaching contract continued in force until June 30, 1991. Although Ward signed the separation agreement on April 30, 1991, the language and terms of the agreement clearly state that "Ward hereby resigns his position as a certified professional employee of the East Lyme Board of Education effective June 30, 1991." (Emphasis added, Plaintiff's Exhibit F). Thus, until that date, Ward continued to have a contract right in his position, and the substitute teacher was merely taking the place of the ill teacher, and not filling an "opening" because none had been created. Accordingly, the Board was not obligated to notify Spellman of the substitute position under the recall provision of the CBA.[5]
Spellman cites no authority for the proposition that hiring a substitute for Ward's position constitutes an opening under the terms of the CBA. In fact, the ELTA makes a valid and persuasive point in its brief that allowing the Board to recall a laid-off teacher as a long-term substitute would permit the Board to recall a teacher to fill an inferior position with lower pay and less job security. CT Page 3563
Thus, based on the above analysis of the contract language, the court finds that the court has subject matter jurisdiction over the complaint. The hiring of the substitute teacher in the Fall of the 1990 school year did not constitute a grievable event that would have triggered the 30 day CBA requirement. Thus, Spellman's filing of the grievance in June of 1991 was of no legal effect, and the doctrine of exhaustion has no application to the facts of this case.
Having decided the jurisdictional issue through the interpretation of the CBA, the court must also conclude that the need to hire a substitute for Ward was not an opening as a matter of law. Therefore, the court finds that there are no material issues in dispute. The Board simply did not breach any of its obligations under the CBA. Spellman's motion for summary judgment is denied as a matter of law, and the Board's cross-motion is granted.
Finally, count two of the complaint alleges a breach of the duty of fair representation by the ELTA. Our Supreme Court, however, has noted that "an employee has no cause of action whatsoever against its union where the employer has not breached the collective bargaining agreement." Mastro v.Board of Education, 200 Conn. 482, 487, 511 A.2d 310 (1986). As discussed above, there was no breach of the collective bargaining agreement, and therefore, ELTA must prevail on its cross-motion for summary judgement as well.
CONCLUSION
For the above stated reasons, Spellman's motion for summary judgement is denied. Defendant Board's and ELTA's respective cross-motions for summary judgement are granted.
Hurley, J.